Popilock et al., Appellants, *v.* Piernikoski et al.

588

Argued October 1, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Harry A. Demar,* for appellants.

*Herman J. Tahl,* for appellees.

OPINION BY ROSS, J., January 8, 1948:

This is a bill in equity to have the beneficiary of certain insurance policies adjudged trustee of the proceeds

thereof on the ground that the insured had established an oral trust in favor of the complainants and the named beneficiary. The chancellor dismissed the bill, the court en banc, after affirming the chancellor's findings of fact and conclusions of law, dismissed claimants' exceptions and they have taken this appeal.

The complainants are three sons of the insured, Andrew Popilock, and the administrator of a deceased son, and the beneficiary of the insurance policies is Helen Piernikoski, the daughter of the insured, hereinafter referred to as the defendant.

Prior to March 10, 1940, the life of Andrew Popilock was insured under two life insurance policies in which his wife Mary was named beneficiary and an "industrial" policy without any named beneficiary. Mary Popilock died on March 10, 1940. On January 10, 1941, while the insured was seriously ill in a hospital, certain of his children met to confer with regard to the disposition of their father's insurance in the event of his death. A few days later, John Popilock and one Stenz, an agent for the insurer who had been present at the conference, called at the hospital, where the insured signed a paper substituting the defendant as beneficiary in place of the deceased wife. The insured recovered and lived for three years thereafter without making any change in the named beneficiary. After his death on March 21, 1944, the insurance company paid the defendant $1737.51 as named beneficiary in two of the policies and as the person to whom, in the exercise of the discretionary power reserved in it, it elected to pay the proceeds of the industrial policy.

The issue in the case is whether an oral trust of the proceeds of the insurance policies was established by the father in favor of the complainants and the named beneficiary.

A trust as to personalty may be established by parol but to create such a trust the burden is on the one who alleges it to furnish proof by evidence clear, precise

and indubitable. *Washington's Est.*, 220 Pa. 204, 69 A. 747; *Hollis v. Hollis*, 254 Pa. 90, 98 A. 789. No trust is created unless the settlor. manifests an intention to impose enforceable duties and no trust is created if the settlor manifests an intention to impose merely a moral obligation. Restatement of the Law, Trusts, vol. 1, sec. 25. The expression of a mere intention to create a trust without more is insufficient. *Smith's Est.*, 144 Pa. 428, 22 A. 916. While no particular form of words or conduct is necessary to create a trust, the declaration of intention to establish one must be definite, clear and explicit, and embody all the essential elements. *Bair v. Snyder Co. State Bank,* 314 Pa. 85, 171 A. 274; *Wallace's Est.*, 316 Pa. 148, 174 A. 397; *Lawrence v. Godfrey,* 296 Pa. 474, 146 A. 107; *Serventi v. Galli et al.,* 347 Pa. 47, 31 A. 2d 715. Equity will not lend its aid to the creation of a voluntary parol trust, however clear may have been the intention to create such a trust; but if the trust is created equity will enforce its execution. *Dougherty v. Shillingsburg,* 175 Pa. 56, 34 A. 349; *Rocks v. Sheppard,* 302 Pa. 46, 152 A. 754.

According to the testimony for the complainants, the family conference of January 10, 1941 was attended by all the children of the insured and two representatives of the insurance company, Stenz and Neiman. Stenz suggested that since the mother had died, a new beneficiary should be designated in the policies. After discussion, it was agreed that the defendant be named with the understanding that she would divide the proceeds of the policies equally among all the children. The defendant denied being at the conference or knowing anything about the proposed change of beneficiary. However, that is not material as the complainants do not contend that a trust was created at the conference but "maintain that the trust was actually created by the intentions of the insured as indicated in his statements to the witnesses plus his action in changing the beneficiary in the manner described".

A few days after the conference, Stenz and John Popilock went to the hospital where the insured touched a pen while his name was signed to a paper designating the defendant as beneficiary. The insured recovered from his illness, returned to his home and remained in sound health, mentally and physically, until his death on March 21, 1944.

John Popilock testified that when he and Stenz went to the hospital, the witness talked with his father in Polish and told him what happened at the conference and the father said, "Well, if they are all satisfied, so am I", and that when Stenz in English told the father "that we had the conference in the house of the boys, and make Helen beneficiary, saying that she would divide the money equally", the father said, "Well, if the boys made it that way, let it go that way". Stenz in response to the question "What did you say to his father at the hospital?" answered 'I said—he understood what was going on—we were going to change the beneficiary; he was agreeable; it was agreeable to him to have it in Helen's name, and she would division it off for the boys; he said it was perfectly satisfactory". This testimony of what transpired at the hospital and testimony of the complainants and Stenz that the father stated many times after he returned from the hospital that he wanted all his children to share in the proceeds of the policies constitute complainants' case.

The complainants argue in effect that the chancellor was bound to accept Stenz's testimony as true and that not to do so was a "capricious disbelief". In *Pusey's Est.*, 321 Pa. 248, 184 A. 844, Mr. Chief Justice KEPHART, at page 262, stated: "Capricious disbelief is not merely disbelieving a witness. To constitute capricious disbelief there must be a wilful, deliberate disbelief of an apparently trustworthy witness, whose testimony one of ordinary intelligence could not possibly challenge or entertain the slightest doubt as to its truth. To charge a judge

with capricious disbelief, it must be so flagrant as to be repugnant to a man of reasonable intelligence." From an examination of the record we are convinced that the court en banc correctly disposed of this contention when it stated: "Much stress is laid on the testimony of the insurance agent Stenz and the failure of the Chancellor to accept it is characterized as a capricious disbelief of credible disinterested testimony. We think this criticism quite unjustifiable as we find it difficult, if not impossible to reconcile the agent's admitted conduct with his testimony. He says that he acted as the insurance adviser of this Polish family, the members of which by their own account were suspicious, quarrelsome, untrustworthy and far from intelligent. He appears as the only connecting link between them and the insurance company. To establish a trust beyond dispute . . . he only had to add the word trustee after the beneficiary's name. Fully aware of Andrew Popilock's intentions and knowing that an oral trust had been declared with respect to the two policies, he nevertheless upon Andrew's death immediately went to his company and without making anyone aware of what he now asserts to have been the true situation, not only secured the immediate and unconditional payment to Helen of the proceeds of these policies but had her named as beneficiary in a third policy by the terms of which the insurance company had the right to select a payee from among the members of the family. This conduct seems to us to be inconsistent with any other idea than that he was fully aware that Andrew's real intention was that his daughter should have the proceeds of these policies for her own use."

The chancellor, affirmed by the court en banc, made, inter alia, the following findings of fact: "5. Andrew recovered his health and lived for three years of sound mind and though pressed by some of his sons to again change his beneficiary, declined to do so on the ground that he wished his daughter Helen to have the money

for herself. 6. That Andrew Popilock never directed or requested his daughter Helen to share the proceeds of the insurance policies with anyone else", and concluded as a matter of law "that the plaintiffs have failed to establish by satisfactory evidence that a parol trust was established . . ."

The rule is long established that the findings of the chancellor, when affirmed by the court en banc have the force and effect of a jury's verdict and in the absence of clear error will not be disturbed on appeal. *Pehlert v. Neff*, 152 Pa. Superior Ct. 84, 31 A. 2d 446; *Serventi v. Galli et al.*, supra, 347 Pa. 47, 31 A. 2d 715. The legal corollary to this principle is that before this rule may be applied the findings must be supported by sufficient evidence. *Jefferson & Indiana Coal Co. v. Marks*, 287 Pa. 171, 134 A. 430. The question is not whether the appellate court as hearing judges would have reached the same conclusion as the chancellor and the court below, but whether the evidence may fairly be said to support the conclusion of the judge who saw and heard the witnesses. *Custis v. Serrill*, 321 Pa. 154, 183 A. 774. The findings of fact in this case are supported by the testimony of the defendant and her credibility was for the chancellor.

In *Donithen v. Independent Order of Foresters*, 209 Pa. 170, 58 A. 142, relied upon by appellants, the question was whether the evidence was sufficient to establish a trust. The credibility of witnesses was not involved. In this case, it is not whether the testimony of the complainants and Stenz is—if believed—sufficient to establish an oral trust. It is a question of whose testimony is to be believed and the chancellor, who had the advantage of seeing and hearing the witnesses, by deciding that question in favor of the defendant, determines this appeal.

Decree affirmed, costs to be paid by appellants.