## Flood v. Flood

*George S. Black*, for plaintiff.

*Robert P. Shoemaker*, for defendant.

EPPINGER, P. J., July 27, 1967.—The parties are separated husband and wife. The husband, who resides in the home, brought this action in equity to require the wife to pay him one-half of the balance in a joint checking account. The wife closed the account by withdrawing all of the money and using it for herself. The wife's counterclaim is that she has been excluded from the home, denied the use of the furnishings and an automobile. She asks that the husband be required to account for one-half the fair rental value of the real estate, pay her the value of

her interest in the real estate, the furnishings and the automobile.

A case in which the husband has petitioned for an order confirming his custody of two children is also being decided today.

From the pleadings and proofs, the court makes the following:

FINDINGS OF FACT.

1. The parties are husband and wife.

2. Before her marriage, defendant had a checking account in the Farmers and Merchants Trust Company of Chambersburg.

3. After the marriage, on June 9, 1958, the husband's name was added to the checking account, and the parties signed a "joint tenancy" signature card.

4. From that time until the account was closed, deposits to the account were made principally by the wife who operated a beauty shop in their home.

5. The husband was engaged in an excavating business, and his income and the wife's were used for the support of the family, which includes two children.

6. On October 18, 1965, when the balance in the joint checking account was $1,096.75, the wife removed the balance and appropriated it to her own use.

7. The parties own real estate as tenants by the entireties and lived there together until they separated.

8. The house was furnished with personal property which is owned jointly by the parties.

9. On November 5, 1965, the wife left the home, after an argument with the husband, the culmination of marital discord which had developed over a period of time.

10. The wife returned and took some personal items and some jointly owned furnishings.

11. The wife also took a jointly owned automobile and, intending to use it for herself, had the locks

changed on it so her husband could not reappropriate it.

12. The husband reacquired the automobile, put it in the garage and locked the garage, and the automobile hasn't been used since.

13. Contending that it was necessary, in order to prevent his wife from further appropriating some of the joint personal property to her own use, the husband changed the locks on the house.

14. It is stipulated that the automobile shall be sold and the proceeds of such sale shall be divided between the parties.

## DISCUSSION

The husband wanted half of the money that the wife took from the joint checking account and started this action. The account was the wife's, but after they married it was changed to a joint account. When this was done, the account became an estate by the entireties: Leach's Estate, 282 Pa. 545, 128 Atl. 497; Berhalter v. Berhalter, 315 Pa. 225. Where property or an account is placed in the names of husband and wife, a gift and a creation of an estate by the entireties is presumed, even though the funds used to acquire the property or to establish the account were exclusively those of one of the parties: Holmes Estate, 414 Pa. 403, 200 A. 2d 745; Shapiro v. Shapiro, 424 Pa. 120, 224 A. 2d 164.

Once an estate by the entireties is created during the marriage relationship, neither party can terminate the estate, nor by his own act affect the other's rights to survivorship. In order to overcome the presumption that an estate by the entireties exists, and that a complete gift ensued therefrom, there must be clear and convincing evidence to the contrary: Holmes Estate, supra.

The wife said the account was hers and that she used it principally as a business account, with only

occasional deposits of joint funds. She and her husband lived together in the house where she operated her beauty shop. She handled most of the payment of family expenses and the earnings of both the husband and the wife were treated as the property of both for the purposes of acquiring their property and paying household expenses. She did not show there was any agreement between them that this should be a sole account. Nor did she, by clear and convincing evidence, show that no gift was intended. She stated that the account was designated a joint account so her husband could acquire the balance upon her death. One of the incidents of an estate by the entireties is, as noted above, that neither party can affect the other's right to survivorship.

The wife did withdraw all the money. The money was used for her own purposes. When she withdrew all the money from the bank and used it for her own individual purposes, she violated the entirety agreement. The violation of the rules by one spouse's appropriating the property to her own use works a revocation of the estate by the fiction of the appropriation being an offer to destroy the estate and there is an acceptance of that offer when the other party starts a suit: Stemniski v. Stemniski, 403 Pa. 38, 169 A. 2d 51. While this terminated the cotenancy, it did not terminate the husband's right to an accounting and to one-half of the sum she withdrew: Brose Estate, 416 Pa. 386, 206 A. 2d 301.

Responding to the husband's demand for half of the account, the wife counterclaimed for an accounting from the husband for one-half the fair rental value and partition of the real estate and partition of the furnishings and of the automobile. She contended that her husband's changing the locks on the house was a willful denial of her right to use the house and furnishings.

Apparently, disposition of the automobile is no problem. The parties have agreed to its sale. It is unfortunate that such an agreement could not have been reached when the automobile had more value. Locked in a garage, unavailable to either party for nearly two years, its value has diminished without compensating use.

The case of Sterrett v. Sterrett, 401 Pa. 583, 166 A. 2d 1, held that so long as the parties were married, even if there was a willful denial of access to one tenant by the entirety, real estate could not be partitioned.

In the Sterrett case, the husband prayed for a partition of real estate acquired by the husband and wife in February 1946, after the passage of the Married Woman's Property Act of May 10, 1927, P. L. 884, sec. 1, as amended, 68 PS §510. In DeLuca v. DeLuca, 388 Pa. 167, 130 A. 2d 179, an earlier case, the court approved language of the lower court in a petition by a husband to partition entireties real estate as folfows:

". . . The Margate house and the furniture bought with the balance in a joint bank account are subject to the use and enjoyment of both parties. If they cannot live together amicably and enjoy them together, the only alternative is to account for the property and divide the proceeds equally".

Despite this, in Sterrett, the court refused to order partition. The DeLuca case might be distinguished by the fact that it involved real estate purchased by one party with money from a joint account. The Sterrett decision also followed the Lindenfelser decisions: Lindenfelser v. Lindenfelser, 383 Pa. 424; 385 Pa. 342; 396 Pa. 530.

In Lindenfelser v. Lindenfelser, 396 Pa. 530, 152 A. 2d 901 (1959), where a suit was brought for partition

of entireties property, early in the opinion Mr. Justice Bok said:

"Several questions have been solved along the way. Since the parties are man and wife, separated but not divorced, counsel agree that there is no case for partition of the three parcels of real estate, which are all held by the entireties".

The inference would be that, as stated in Sterrett, entireties real estate was not subject to partition. Furthermore, in that same decision, the court said:

"Each party is entitled to equal use, enjoyment, and possession of them [three properties] and, if necessary, this right should be enforced by proper injunctive order: see Mower v. Mower, 367 Pa. 325, 80 A. 2d 856 (1951). Since they are still married but estranged, they are entitled equally to the usufruct of the properties: Schweitzer v. Evans, 360 Pa. 552, 63 A. 2d 39 (1949); Lindenfelser v. Lindenfelser, supra (383 Pa. 424); DeLuca v. DeLuca, supra (388 Pa. 167)".

The court in that Lindenfelser case also said:

"Taking our conclusions in Lindenfelser and De-Luca together, we believe the modern rule to be, that where husband and wife are separated but not divorced and where one of them is excluded from the exercise or enjoyment of rights inherent in an estate held by the entireties, an accounting of the property so held may be ordered and the property or proceeds divided equally between them".

If limited to the facts, the proposition would apply only to personal property.

Two well-reasoned lower court cases followed De-Luca, Lindenfelser and Sterrett. In Straub v. Straub, 56 Schuyl. 186 (1960), the court held that it did not have jurisdiction to partition real estate, saying the Married Woman's Property Act, supra, pertained only to divorced tenants by the entireties, and that

the act must be strictly construed. Therefore, the act had no applicability to separated or estranged tenants by the entireties. The court found that the then latest pronouncements of the Supreme Court pertaining to the questions of the partition of real estate (DeLuca and Lindenfelser) were not authority for the proposition that real estate held as entireties could be partitioned when one party is wrongfully excluded from use and enjoyment thereof.

The other case is Brubaker v. Brubaker, 26 Cambria 196 (1962), where it was held that the Sterrett decision was controlling insofar as real estate was concerned. There, the husband, after the parties had separated, started tearing the property apart, taking the floor and other parts of the property out and selling it. Despite this, the court refused to partition the real estate at the petition of the wife.

The more recent case of Reifschneider v. Reifschneider, 413 Pa. 342, 196 A. 2d 324, contains this statement:

"The right to recovery of fair rental value and a sale of and division of the proceeds from realty held by the entireties require a determination that appellant was wrongfully excluded from the enjoyment of such realty".

But there the wife only claimed her share of the rents, in the counterclaim, and none were found to exist. She raised the question of partition after trial. Since no evidence was taken, the Supreme Court refused to enter into a consideration of that question.

The latest authority seems to be Shapiro v. Shapiro, supra. There, the parties owned what was known as the Felton property, as tenants by the entireties. They acquired it in 1941. The chancellor found that neither party successfully rebutted the presumption that the ownership of the Felton property was vested in them as tenants by entireties. So far as appears from the

Supreme Court's opinion, the Felton property is the only strictly entireties real estate involved in that case. And the Supreme Court held that real estate could be partitioned where there is a violation of the rules by one spouse appropriating the property to his own use, thus working a revocation of the estate by fiction of the appropriation being an offer of an agreement to destroy the estate and acceptance of that offer when the spouse starts a suit, or, as in this case, files a counterclaim. The court said that, although Stemniski involved bonds and savings accounts, the earlier case of DeLuca adjudged real property subject to accounting and division. It went on to say that in Lindenfelser, 396 Pa. 530, the court considered both the earlier Lindenfelser case and the DeLuca case, and stated the modern rule to be that where a husband and wife are separated but not divorced and, where one of them is excluded from the exercise or enjoyment of rights inherent in the estate held by the entireties, an accounting of the property so held may be ordered and the property or proceeds divided equally between them. "The modern rule permits the partition of real estate", the court concluded.

Summarizing the facts, the court said:

"The wife was excluded effectively from the exercise and enjoyment of her inherent rights in the entireties' properties".

"The rentals from Felton have been paid to a bank and a portion applied to repay a loan created for the husband's sole benefit. He has refused to account to the wife for rentals received from said property and has prevented her from receiving any rentals for her own separate use".

Affirming the decree of the chancellor, who had appointed a receiver, the court directed that the Felton property should be partitioned after the receiver's account was completed.

We must determine whether plaintiff's act in changing the locks on the real estate gives defendant the right to have the real estate partitioned.

First, DeLuca contains rather broad language, which would indicate that where husband and wife can't live together, real property may be partitioned. Reifschneider, however, added the requirement that there must be a determination that one spouse was wrongfully excluded from the enjoyment of such realty. In Shapiro, though the "wrongful exclusion" test was not specifically applied, it is apparent from the facts in that case that the husband had wrongfully excluded the wife from the use of the property, appropriating all of the rents to his own use and refusing to account to her.

We do not believe it is intended that simply because husband and wife cannot get along together and one excludes the other from the marital domicile, a revocation of the estate by the entireties is automatically worked. We can imagine a situation where a husband leaves a wife and threatens her. In order to protect herself and her children, she might change the locks on the door to keep him out. If it were not necessary to apply the "wrongful exclusion" test, the husband could, by this simple device, compel the court to partition the real estate to the detriment of his family.

We conclude, therefore, that for one spouse to be entitled to partition of entireties real estate, there must be a wrongful exclusion of that spouse from the real estate.

Here, the parties separated when the wife left the husband, also leaving the two children with him. He has continued to reside in the real estate and has cared for the children there. The wife has visited with the children at the home and has not been prohibited from using the house for such visitation.

A line of New Jersey cases defines a wrongful act as including any act which, in the ordinary course, will infringe upon the rights of another to his damage, except it be done in the exercise of an equal or superior right: Judson v. Peoples Bank & Trust Co., 17 N. J. 67; 110 A. 2d 24; Fitt v. Schneidewind Realty Corp., 81 N. J. Super. 497, 196 A. 2d 26; Kurtz v. Oremland, 33 N. J. Super. 443, 111 A. 2d 100. The definition is a good one.

Undoubtedly, when the wife left, she considered herself entitled to half of the furnishings of the house, so she went to get some of them. The husband, believing the house might be stripped of half, or perhaps more, and wanting to maintain the home for himself and the children, changed the locks, so she couldn't come again when he was away and take more of the furnishings.

Under these circumstances, the act of changing the lock on the door was not such a wrongful exclusion of the wife from the premises such as would work a revocation of the estate by the entireties in the dwelling house. If this is so, it would follow that the changing of the locks did not work a revocation of the estate by the entireties in the furnishings.

By coming to this conclusion, we have not denied the wife the right to the use and enjoyment of her share of the property. This right could be enforced by injunctive order (Lindenfelser v. Lindenfelser, supra, 396 Pa. 530), and the wife could be permitted to operate a beauty shop in the premises if that is what she wants to do. This is mentioned only because counsel argued the point; there was no evidence the wife tried to reestablish her beauty shop in the premises. By changing the locks, the husband has not destroyed the property, consumed it, nor appropriated it exclusively for his own use. It is still the family residence, where he lives with their children.

Since the husband's use of the premises in the manner indicated is not a wrongful exclusion, it follows that the wife would not be entitled to one-half the fair rental value of the real estate, since she left.

### CONCLUSIONS OF LAW

1. When a husband's name is added to the wife's checking account and there is no showing that it was intended to be a sole account, or that a gift was not intended, the account is owned by the husband and wife as tenants by the entirety.

2. A violation of the rules pertaining to estates by the entireties by the appropriation by the wife of a bank account held in the name of both the husband and wife to her own use, where the wife did not show that a sole account was intended, or that no gift was intended when the deposits were made to the account, revokes the estate by the fiction that the appropriation becomes an offer of an agreement to destroy the estate, and the acceptance of that offer occurred when the husband started the suit.

3. Property thus appropriated is then fit for an accounting and division.

4. Where there is a wrongful exclusion of the wife from the marital domicile by the husband, by the application of the same principles, the modern rule permits the partition of real estate, and the wife's counterclaim would be the acceptance of the fictional offer of an agreement to destroy the estate by the entireties in real estate.

5. For the husband's act to be wrongful, in excluding the wife from the marital domicile, it must be such an act as infringes upon the rights of the wife to her damage, and one not done in the exercise of an equal or superior right.

6. Where a wife leaves a husband, following marital discord, returns to the marital domicile in her hus-

band's absence and removes jointly owned furnishings, and the husband changes the locks on the doors, the changing of the locks is not such a wrongful exclusion of the wife from the premises as would work a revocation of the estate by the entireties, authorizing either the payment to the wife of the fair rental value or partition of the real estate, especially where the husband continues to live in the premises with the parties' children.

7. Under such circumstances, the husband's act would not work a revocation of the estate by the entireties in the household furnishings.

8. The parties having stipulated, the automobile shall be sold and the proceeds, less expenses of sale, shall be divided between them.

### DECREE NISI

Now, July 27th, 1967, it is hereby decreed:

1. That defendant pay plaintiff one half the balance of the checking account, the sum of $548.37.

2. The automobile be sold and the proceeds, less expenses of sale, be divided between the parties. The parties are given 60 days from the date the decree becomes final to agree to the method of sale and distribution. In the event of such agreement, the parties shall file an accounting with the court and each shall acknowledge receipt of his or her share of the proceeds. If the parties cannot reach such an agreement, the court will appoint a trustee for the purposes of selling the automobile.

3. In all other respects, defendant's counterclaim is denied.

4. Each party shall pay his or her own costs.

Unless exceptions are filed within 20 days of the notice of this adjudication, this decree nisi shall be entered by the prothonotary, upon praecipe by either party, as the final decree.